Good morning, and may it please the Court, my name is Edward Borden, and I represent the appellant in this matter, the defendant below, Frankie Correa. And with the Court's permission, I'd like to reserve three minutes for rebuttal. Granted. Thank you. With regard to the expectation of privacy in this common hallway area, what did Mr. Correa, it has two elements, subjective and subjective, right? What did Mr. Correa do to subjectively exhibit an expectation of privacy? I was going to address that issue right off the bat, Your Honor. I believe that the way to look at the issue of subjective expectation of privacy, the circuit which held that that is really a legal rather than a factual issue. But was subjective expectation of privacy even argued here? Well, it was not. I was going to reach that as well. It was not, notwithstanding seven briefs, it was never raised by the government. But Supreme Court says it's an issue, don't they? It does. Generally, we should follow what they say. I understand, Your Honor, although Stigall would suggest that the government really forfeited that argument by not raising it. Well, Stigall dealt with a home. It did. This was a hallway, a stairway, a common area. Absolutely. But the first part of Stigall actually talked about forfeiture of an argument not made below. Now, there is without doubt case law that says this Court can affirm based on any ground and supported by the record. Let's assume we might be willing to do that. What did he do to exhibit a subjective expectation of privacy? Well, I was going to say that I think the appropriate thing to do if the Court finds that to be a significant issue after dealing with the objective side of the equation is to remand the matter to the district court so that that issue can be addressed factually. But the short answer is that Mr. Gray did not testify. We wouldn't have to remand it, though, if we found there was no objective basis. That's correct. We don't have to even reach that. That's correct. What did he do, if anything? To subjectively... Subjectively. To exclude other tenants from the stairway. Well, there is no evidence in the district court record that addresses that. What is in the district court record, though, is the fact that he had the authority to exclude people. He did? Where was that in the record? On the basis of what? On the basis of the fact that the building was locked, closed, and there was a sign excluding people without being accompanied by a tenant. So any tenant could have brought anybody in they wanted to. Any tenant could have done that, yes. What about maintenance people? What about repair persons that the building calls? They don't have the permission to enter without either the participation of a landlord or another tenant. But another tenant could have brought anybody in they wanted to. Another tenant could have. Mr. Correa would have nothing to say about it. In the same way that my roommate in my apartment can bring in anybody they want, but that doesn't prevent me from having a reasonable expectation of privacy. If Mr. Correa puts out trash in the hall, does he have an expectation of privacy that that trash is not put in the hall? I think if he puts personal property out in the hall, he can still have a level of expectation of privacy with respect to that property. But, I mean, normally you expect it to be picked up and carried away. You do. And that's why he puts it in the hallway. Trash, I think, is different from what often happens in common hallways, and that is that the tenants will put personal property there, whether it's bicycles or tools or work equipment or the like. And by doing so, I don't believe. If you put anything that's yours outside your door, it's deemed to be protected by a ‑‑ there's a right to privacy? I suggest to you that there is, that in the common areas, it's certainly not the same level of expectation as one would have within their own apartment. But I think to say that there is no reasonable expectation of privacy in a locked hallway ignores the fact that It's not a locked hallway. It was a locked door with an open window into which Marshall Podochuk, a big guy, fit. Yes. And opened. So there's not a locked hallway or a stairway under guard or anything like that. No, there wasn't. I mean, you have tenants using it. You have Mr. Correa's girlfriend, I think, taking the laundry downstairs to wash it. So, I mean, it was open to all. Was not open to all. She was not a resident. She was not, I don't think, a resident of the building. She was a visitor there by license from Mr. Correa. She's using the hallway. Yes. Oh, a lot of people could use the hallway. But he has a ‑‑ well, I'm ‑‑ Well, he does have the right, for instance, if he came to the door and was, that is, the exterior door, was coming into the building, somebody came up behind him and said, I want to go in with you. He had the right to say no. But to have in the cases, with the exception of the Sixth Circuit case, I suppose, the means of entry is not the issue. The means of entry is not the issue. The issue is whether he has a reasonable expectation of privacy. That's exactly what we're talking about, is whether ‑‑ It doesn't matter whether somebody sneaks in with a tenant. I mean, with the cases, there are a legion of cases. But all I'm saying is those cases go off on what I respectfully suggest is not the right question. Those cases say, do you have an absolute right to exclude all others from the space? Well, reasonable expectation of privacy. Well, that's the question to be asked in making that determination. And that's the first question to be asked. It is. And if that was the determining factor, that is, an absolute right to exclude all others, then I in my apartment with a roommate would not have any reasonable expectation of privacy. But in the apartment is dramatically different from in the common hallway. I agree that it is dramatically different. But all we are asking here is we start with the proposition that this was an out and out flagrant violation of the Fourth Amendment. The law that those officers had no right to enter that building. Don't you need police protection in common hallways under Howland, the Second Circuit case? You sometimes do. But the police, clearly, they violated state law. They trespassed. They did not have a legal right. How does trespass matter? We're not talking about property rights here. The Supreme Court has rejected that. We're talking about whether there's a reasonable expectation of privacy, right? But in making that determination, I believe that this court in the Kennedy case that Mr. Gross mentioned supplementally says that you do consider property rights. The property rights are a part of it. And Mr. Correa had a form of property right in the hallway, when one thinks about it. He has an easement to use that hallway for ingress and egress. He and everybody else who's around. Yes, but just because multiple people have a property right doesn't mean that there is not a reasonable expectation of privacy. Because, as I say, what we're dealing with here is not the question of whether. Isn't there a conflation? I mean, a lot of this traces back to this 1948 case, the McDonald case. And there was a concurrence by Justice Jackson where he talked about trespass. But isn't trespass really different from analyzing privacy rights? And, you know, I'm not sure that taken from a concurrence, I don't think that's the law. Yes, they were, quote, trespassing supposedly. But that has nothing to do with whether there was a reasonable search of this individual. Well, there was clearly not, respectfully, there was not a reasonable search. Stigall, 30 years ago, held that the fact that you have an arrest warrant does not give you the right to enter property. In the home, in the home. It doesn't give you a right to enter anywhere. In the home. And let's put McDonald to rest. That was 20 years before the Supreme Court decided Katz, which was the beginning of your reasonable expectation of privacy. So, of course, by definition, the Court of McDonald could not even address that issue. And certainly it's a two-justice concurrence. It's not controlling law. It is simply a practice. My only point was, and I agree that you really do start with Katz, but there seems that you said this is trespass. And I'm not sure trespass is really relevant to this analysis. It isn't. It isn't, is it? I mean, it's an expectation of privacy. They made that clear. But I believe the fact that there's... It's been discussed without question, but the ultimate issue is, is there a subjective or objective expectation of privacy? But I believe that the fact that this was legally a trespass does matter. Okay. Well... Perhaps not exactly for the reasons just discussed. That's your position. I don't think you're not getting a lot of ringing support here, although perhaps I overstate the issue. But the reason that it's a trespass matters is because the state law of trespass recognizes a property right, recognizes that when someone... Every court of appeals, with the exception of the Sixth Circuit, has held that there is not a reasonable expectation of privacy. Even the Sixth Circuit admitted that their case was outside the mainstream in a subsequent opinion. Isn't that so? That is correct. I agree. The Sixth Circuit certainly did... It is the only case in that regard. No doubt about that. Happy to answer any other questions the Court might have? No. Thank you very much. Thank you, Mr. Boyd. Mr. Gross. Good afternoon. Trespass and the Fourth Amendment are clearly no longer coterminous in light of current Supreme Court Fourth Amendment jurisprudence. Why do we discuss it, then? Well, because I think it still has some relevance. This Court's recent opinion in the Diamond case, I believe the one that I sent the 28-J letter in, when it's talking about the reasonable expectation of privacy of a person who's operating a vehicle but is not an authorized driver on the rental agreement, that property still has some role to play in describing the contours of the reasonable expectation of privacy. But what was important in that case, the Court pointed out, I think the operating and most salient fact that this Court focused on, and that's the decision that's only a couple of months old now, is that the defendant in that case had no right to exclude anybody else from operating that vehicle. And Mr. Chris, in exactly the same position here, he can't prevent, of course, any of the other tenants from entering the common hallway. He can't prevent the tenants from bringing any of their invitees into the hallway. He can't keep the landlord out of the hallway or any of the landlord's agents or any of the landlord's invitees out of the hallway. And that's why there's such a preponderance. Is it true that the subjective element wasn't raised below? It wasn't raised below. Why not? Well, it was the defendant's burden to raise it, and he didn't raise it. Now, I have to say. Did he show standing? We say he doesn't have standing to the extent that standing is coterminous with a reasonable expectation of privacy. He had the burden. Did you make him prove standing first? Well, that's, I think, a very good question. And this was not addressed in the district court. And so, you know, I think there is an element. I don't think we've waived the argument that he has to show a subjective interest in privacy. And he could have done that, for instance. It's hard in his position. But I can imagine a situation where someone would say, I had a subjective interest of privacy in a common hallway if, for instance, I'm living in a rooming house, the kind of situation that you had at McDonald's, which is different than what we have here. And everybody in the rooming house said, look, we're all going to agree that we're not letting anybody into this rooming house unless all of us say it's okay to let that person in because, of course, we're all committing a crime in here, and we don't want to let anybody in to see it. You know, that would be something you could do to create a subjective interest in privacy, and that wasn't done here. Now, Judge Van Antwerpen, we didn't make us think about this in the district court. We didn't stand up in front of Judge Rodriguez and say, he hasn't established a subjective interest in privacy. So although it's his burden and he was required to raise it in the district court and didn't do it, that isn't something that we complained about below. I think you just assumed arguendo for standing and went on. I mean, I think this is what Judge Rodriguez did as well. Yeah. But the reason that trespass doesn't equate a violation of the Fourth Amendment I think has clearly been established by the Supreme Court. It said in Katz, you don't need a physical trespass in order to have a Fourth Amendment violation. And then it said in Oliver, the open fields case, it said even if you have a trespass, a clear trespass, the police, you know, walking past fences, walking past no trespassing signs, going into the open fields, the court said it doesn't matter. That's not dispositive. You don't have a reasonable expectation of privacy in open fields. And that's why I think the majority of the courts of appeals that have looked at this said you simply can't have an objectively reasonable expectation of privacy in a common hallway where all sorts of people can come and go. So unless the court has any questions of me, I'll give my time back to the court. I know in Pennsylvania you need a warrant to enter a home, unless there's an exception. Have they extended that to other buildings, too, like he claimed? Stiegel, the case that he's relying on, Judge Perry, is absolutely right, of course. Stiegel says that an arrest warrant will allow you to go in. She wants us to say that to her all the time. You're absolutely right, of course. Actually, you usually do. That's true. But Payton was the case that said you can go into the defendant's home with just an arrest warrant, and Stiegel was the subsequent case that said if you want to go into somebody else's home, you need a search warrant to arrest that person. We're not in anyone's home here. We're in the hallway. And we had an arrest warrant. This was a case where, and just factually, you know, to show that the, you know, I heard Mr. Borden say this is a flagrant Fourth Amendment violation. You know, the facts of this case are you've got a fugitive squad looking for someone who busted out a prison. Obviously a dangerous person. He's got a couple of associates who are, have, you know, criminal histories for drug-dealing guns, you know, and they get information based on monitoring cell phones that these two accomplices are in this building now. Now, they've got to move. And they've got arrest warrants. That's right. And they've got arrest warrants to get those people. So they acted completely reasonably in this case. And did he open the window a little bit more? Inspector Podosek said he didn't open it at all. He said he was able to get his, get himself in. He was a big guy. I don't know. Personally, Judge, I don't remember. Well, that's what the record says. That's certainly what the record says. You're such an experienced appellate lawyer, you should have found that word big. Yes. And also the testimony, there were no bars on the window. Yes, yeah. In that window. Right. Thank you. Thank you. We will hear the rebuttal now. Oh, God. You both have this argument. The two of you. If I may, I'd like to come back briefly to the issue of the facts and the Fourth Amendment violation. Because those officers, there were 15 armed, ready officers who were there to execute search, execute arrest warrants for a traffic ticket and a disorderly person's complaint. Why does that matter? Because that tells you that they weren't there to arrest those two gentlemen. They were there, as Mr. Gross just said, to find those two gentlemen so they could find Espinoza. They believed Espinoza could have been with those two gentlemen because they had visited him in the Union County Jail and they had made cell phone contact with him in the Union County Jail. Absolutely. And they traced them to this house. Absolutely. And there was reason to believe after Espinoza had fled that he was with them in that house. Well, I don't believe there's anything in the record that suggests that they believed he was there. What the officer said is they were looking for Romero and Luna to find out where Espinoza was. Okay. And they don't have to have the arrest warrant in their hand. As long as it exists, it's enough, right? Absolutely right. Okay. But what all those facts tell you is they weren't there to arrest anybody. They were there to get Luna and Romero to try to find Espinoza. What does that mean? They didn't care about the Fourth Amendment violation. This is, for law enforcement officers, the fact that you can't enter a structure, a home, with an arrest warrant only if it is not the home of the person named in the arrest warrant. They did not enter the home. This is the distinction. When I made one of my early arguments to this court when I was a child, I remember Judge Rosen kept pilloring me in the difference between a house and a home. This was not his home. This was the hallway. Well, that is the question. But certainly they did not have legal authority to enter that area. It was a trespass under state law. That's number one. And I understand that that may not matter to the legal determination of expectation of privacy. But what it does tell you is that the officers didn't care about the Fourth Amendment violation, which they knew they were committing. They didn't care about the trespass. And that's why so the only question here is not the validity of the seizure and the entry. They are clearly illegal. No doubt about that. The question is whether Korea can raise that issue. So that's what we're talking about. We find there's no reasonable expectation of privacy. He doesn't have standing to raise it. That's correct. But it doesn't mean that there was no Fourth Amendment violation. And that is the policy reason that I suggest to you that this court should adopt in terms of making that determination. Because if Frankie Korea, who's not named in the arrest warrant, who was a resident of the building, who wasn't even a target of the search, cannot raise a clear Fourth Amendment violation in that area, then nobody can. Thank you. We will take the case under advisement. The clerk will adjourn court. Thank you.